Filed:  May 5, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 95-5816
(CR-94-165-WMN)

United States of America,

Plaintiff - Appellee,

versus

Charles Zandford,

Defendant - Appellant.

O R D E R

The Court amends its opinion filed April 3, 1997, as follows:

On page 2, first paragraph of the opinion, line 1 -- "53 months" is corrected to read "5<u>2</u> months."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                 No. 95-5816

CHARLES ZANDFORD,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-94-165-WMN)

Argued: January 30, 1997

Decided: April 3, 1997

Before RUSSELL and WILKINS, Circuit Judges, and HERLONG,
United States District Judge for the District of South Carolina,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Deborah C. Wyatt, WYATT & CARTER, Charlottes-
ville, Virginia, for Appellant. Thomas Michael DiBiagio, Assistant
United States Attorney, Baltimore, Maryland, for Appellee. **ON
BRIEF:** Lynne A. Battaglia, United States Attorney, Baltimore,
Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Charles Zandford appeals his conviction and sentence of 52 months imprisonment for committing thirteen counts of wire fraud. Zandford contends the Government failed to present sufficient evidence of wire fraud to sustain his convictions; and that the district court erred in admitting the testimony of four Government witnesses. Because each of Zandford's grounds for appeal is meritless, we affirm.

I.

Charles Zandford worked as a stockbroker for a brokerage firm, which had offices in Bethesda, Maryland, and New York, New York, from May 1987 through February 1991. He met William Wood in November 1987, and solicited Wood to invest with him. Wood, 71 years old at the time, opened a joint investment account with Zandford. The account was titled in Wood's name and that of his daughter, Diane Okstulski, who suffered from a multiple personalities disorder. Within four months after their first meeting, Zandford persuaded Wood to entrust him with $419,255 to "conservatively invest." Nineteen months later, all of Wood's money was gone.

In January 1991, the National Association of Security Dealers ("NASD") inadvertently discovered that Zandford had systematically transferred money on over twenty-six separate occasions from Wood's and Diane's investment account to accounts either controlled by Zandford or in Zandford's name. When confronted about the transfers one month later, Zandford acknowledged that Wood and Okstulski (hereinafter "the Woods") had transferred money to him. He explained that pursuant to three agreements he had entered into with the Woods in 1988 and 1989, they gave him: $100,000 under a personal services agreement for services he rendered to them as an overseer of their personal and medical needs; $150,000 to invest in and

2

operate a vintage car restoration business; and $140,000 as an unsecured personal loan for reasons undisclosed. The remaining money he allegedly spent on behalf of the Woods. Mr. Wood died in 1991.

In April 1995, a federal grand jury issued a superseding indictment against Zandford for thirteen counts of wire fraud in violation of 18 U.S.C. § 1343. The first count related to money Zandford obtained from selling the Woods' shares in a mutual fund. The remaining counts related to twelve separate withdrawals Zandford made from the Woods' joint investment account. After a three-week trial, a jury convicted Zandford on all counts. He received a sentence of 52 months imprisonment.

II.

Zandford contends that the evidence is insufficient to support his wire fraud convictions. When reviewing challenges to sufficiency of the evidence, we determine whether any rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt.[1] Assuming the jury weighed the evidence, resolved all conflicts in the testimony, and drew all reasonable inferences from the facts, we consider all of the evidence in the light most favorable to the government.[2]

To prove Zandford violated the wire fraud statute, the Government had to establish: (1) the existence of a scheme to defraud and (2) use of interstate wire communications to facilitate the scheme.[3]

First, Zandford contends there was insufficient evidence to find that he had engaged in a scheme to defraud. He claims the Woods willfully transferred their money to him via three lawfully-executed agreements. He also maintains that the Government's case against him was flawed because it failed to use relevant contract law to invalidate the agreements. The Government's burden, however, was not to

_____

[1] Jackson v. Virginia, 443 U.S. 307, 319 (1979).

[2] Id.

[3] 18 U.S.C.A. § 1343 (West Supp. 1997); United States v. ReBrook, 58 F.3d 961, 966 (4th Cir. 1995) (citation omitted).

3

disprove Zandford's defense. Rather the Government's obligation was to place enough evidence before the jury to prove beyond a reasonable doubt that Zandford engaged in a scheme to defraud the Woods.

The term "scheme to defraud" means "any scheme to deprive another of money or property by means of false or fraudulent pretenses, representations or promises."[4] It includes fraudulent schemes based on false statements or factual misrepresentations.[5] Thus, with respect to the alleged agreements, it was sufficient for the Government to cast doubt upon the validity of the agreements or demonstrate that the agreements themselves manifested the scheme by which Zandford tried to "legitimize" the wholesale theft of the Woods' money.

The Government presented ample direct and circumstantial evidence showing that Zandford had engaged in a scheme to defraud the Woods. It showed that: (1) Zandford had systematically transferred large sums of money from the Woods' account to his own accounts over a nineteen month period; (2) prior to November 1987, the Woods had no relationship with Zandford; (3) Zandford, and not the Woods, benefitted from the money transfers; (4) the Woods were vulnerable victims due to their physical and mental limitations; (5) the personal services agreement, the loan, and the vintage car restoration business were not only contrary to the Woods' stated investment objectives, but they violated the rules of NASD and those of Zandford's employer that prohibited brokers from engaging in such arrangements; and (6) vehicles owned as part of the vintage car restoration business were titled in the name of Zandford's girlfriend as opposed to the Woods' names. Additional evidence showing a scheme to defraud included Zandford's failure to disclose to his employer the existence of the agreements and personal loans; his failure to report on his taxes or bank loan applications that he received income from acting as the Woods' personal representative; and his failure to disclose on his taxes his involvement in a vintage car restoration business. Zandford's contention that there is insufficient evidence supporting that he had engaged in a scheme to defraud the Woods is meritless.

_____

**4** <u>Carpenter v. United States</u>, 484 U.S. 19, 27 (1987).

**5** <u>See</u>, <u>McNally v. United States</u>, 483 U.S. 350, 359 (1987).

4

Zandford also contends that there was insufficient evidence to find that he used wire transfers in furtherance of a scheme to defraud. This contention is also without merit. On behalf of the Government, the branch manager and the compliance officer of the brokerage firm testified that every time money was withdrawn from the Woods' account a wire communication was used between the branch office in Bethesda, Maryland, where Zandford worked, and New York, New York, to verify the availability of funds and permit the transfer. Additionally, computer-monitored money line documents showed that Zandford used a wire communication between Maryland and New York for nine of the thirteen withdrawals he made from the Woods' joint account.

Given the foregoing evidence, we hold that any rational trier of fact could have found the essential elements of wire fraud beyond a reasonable doubt. We affirm Zandford's thirteen convictions for wire fraud.

III.

Next, Zandford contends the district court erred in admitting the testimony of four government witnesses. We review evidentiary rulings for abuse of discretion.[6]

First, Zandford contends that the Government used the hearsay testimony of two doctors and a nurse in order to establish Mr. Wood's incompetence during the time period in which Zandford entered into the agreements with the Woods. The record reveals both doctors testified as expert witnesses and treating physicians. A neurologist testified that Mr. Wood was his patient during 1988-91 and was virtually blind, completely incompetent, and medically disabled. The other doctor, a general physician, corroborated much of the neurologist's testimony, and stated that from January 1989 to February 1990, Mr. Wood suffered from dementia. The doctors' proffered testimony as to Mr. Wood's medical condition during the relevant time period was admissible under Federal Rule of Evidence 703, "Bases of Opinion Testimony by Experts," and under a hearsay exception, Federal Rule

_____

[6] United States v. Heater, 63 F.3d 311, 320 (4th Cir. 1995).

5

of Evidence 803(4), "Statements for purposes of medical diagnosis or treatment."

Zandford also contends that the district court erred in allowing the Government to admit into evidence the nursing notes of the nurse assigned to care for Mr. Wood in a nursing home from January 1990 to June 1991. The notes characterized Mr. Wood's medical condition as "senile dementia," and the nurse testified that her observations of Mr. Wood were consistent with that characterization. Pursuant to Federal Rule of Evidence 803(6), "Records of regularly conducted activity," these notes were properly admitted as they were kept in the regular course of business by the nursing staff at the nursing home.

Second, Zandford contends that the district court erred in allowing a psychologist to testify regarding Okstulski's mental capacity during the relevant time period. This testimony was also properly admitted under Federal Rules of Evidence 703 and 803(4) as discussed above.

The district court did not abuse its discretion in admitting the testimony of the doctors, the psychologist, or the nurse's notes.[7]

IV.

For the foregoing reasons Zandford's conviction and sentence for thirteen counts of wire fraud is

AFFIRMED.

---

[7] Zandford raises numerous other issues which we hold to be meritless.