**Charles ZANDFORD, Plaintiff,**

**v.**

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., et al., Defendants.**

**No. CIV.A. 95–1621(GK).**

United States District Court, District of Columbia.

July 16, 1998.

Francis Joseph Warin, Gibson, Dunn & Crutcher, L.L.P., Washington, DC.

## MEMORANDUM OPINION

KESSLER, District Judge.

This is Plaintiff Charles Zandford's third suit against Defendants relating to actions taken under the regulatory and disciplinary authority of the National Association of Securities Dealers, Inc. ("NASD"). Both prior cases have been dismissed.

This case arises from a 1994 indictment and subsequent conviction of Zandford on thirteen counts of wire fraud. Zandford alleges that, in pursuing its investigation against him, Defendants abused process in violation of common law (Count I) and violated the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), 1962(d), and 1964(c) ("RICO") (Count II).

This matter is before the Court upon the Defendants' Motion to Dismiss [# 25] pursuant to Fed.R.Civ.P. 12(b)(6). Upon consideration of the Defendants' Motion, Plaintiff's Opposition, Defendants' Reply, and the entire record herein, Defendants' motion is hereby granted.

## I. BACKGROUND [1]

Charles Zandford was employed as a registered representative by Dominick and Dominick, Inc. ("Dominick"), a securities brokerage firm, in its Bethesda, Maryland retail sales office from May 1987 until February 1991. Zandford and Dominick were subject to regulation by the NASD, a national securities association responsible for bringing disciplinary proceedings against member firms and their registered representatives. The NASD was subject to direct oversight by the Securities and Exchange Commission ("SEC").

In early 1987, a NASD District Business Conduct Committee ("DBCC") filed an administrative complaint against Zandford. (Compl. ¶ 42(A).) In October 1988, the DBCC conducted a hearing and found Zandford guilty of securities violations.[2] (Compl. ¶ 42(C), (E).) In March 1989, Zandford appealed the DBCC decision to NASD's Board of Governors. (Compl. ¶ 42(F).) The Board of Governors dismissed the excessive trading charge and affirmed the violation of improper deposit of funds. (Compl. ¶ 42(G).) Zandford then appealed the Board of Governor's ruling to the SEC. In November 1991, the SEC reversed the NASD Board of Governors' decision and set aside all charges against Zandford. (Compl. ¶ 42(I).)

In 1991, the NASD initiated a new investigation of Dominick. (Compl. ¶ 42(J).) During the course of its investigation of Dominick, the NASD discovered information leading them to initiate an investigation of Zandford for theft and embezzlement. (Compl. ¶¶ 42(K), 42(L).)

On February 2, 1994 Zandford filed Civil Complaint No. 94–180(GK), in this District Court, against the NASD, Brian Hobbs, and David Bender, alleging defamation, false light invasion of privacy, and continuing interference with business relations, all claims being based on the 1991 investigation of Zandford and Dominick.[3] (Compl. ¶¶ 12, 13.) On February 3, 1994, the NASD, Hobbs, Bender, Roger Sherman, James Lindsay, Jr., and Lynn Nellius referred Zandford to the Federal Bureau of Investigation ("FBI") for investigation of suspected securities violations.[4] (Compl. ¶ 42(R).)

---

1. For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. *Shear v. National Rifle Ass'n of Am.*, 606 F.2d 1251, 1253 (D.C.Cir. 1979). Therefore, the facts set forth herein are taken from Plaintiff's Complaint.

2. Zandford was found guilty of: (1) excessive trading; and (2) depositing personal funds in customer accounts in violation of NASD rules. (Compl. ¶ 42(E), (G).)

3. Brian Hobbs was an Assistant Director and David Bender was a District Examiner at the NASD.

4. Roger Sherman, James Lindsay, Jr., and Lynn Nellius all worked for the NASD. Sherman was a staff attorney. Lindsay and Nellius were District Examiners.

In July 1995, Zandford was convicted by a federal jury of thirteen counts of wire fraud in violation of 18 U.S.C. § 1343. He was sentenced to fifty-two months in federal prison. On April 8, 1996, this Court stayed Civil Action No. 94–180(GK) pending a review of Zandford's conviction by the Fourth Circuit. Zandford's conviction was affirmed by the Fourth Circuit Court of Appeals on April 3, 1997. *See United States v. Zandford*, 110 F.3d 62, 1997 WL 153822 (4th Cir.1997) (unpublished disposition). On May 7, 1997, the stay was lifted. Thereafter, this Court dismissed Civil Action No. 94–180(GK) for failure to state a claim, Fed.R.Civ.P. 12(b)(6).

In Count I of his current Complaint, Zandford alleges abuse of process. Zandford argues that his referral to the FBI, indictment, and subsequent prosecution were caused by the Defendants in order to leverage their defense to Civil Action No. 94–180(GK). (Compl.¶¶ 9, 15, 23, 30.) Zandford claims the Defendants used his indictment as grounds to dismiss Civil Action No. 94–180(GK) by arguing that the indictment vindicated their tortious conduct. (Compl.¶ 21.)

Count II of Zandford's Complaint alleges that the Defendants engaged in a pattern of racketeering activity, beginning with the 1987 DBCC complaint and continuing through Zandford's 1995 wire fraud conviction, in violation of RICO. (Compl.¶¶ 10, 38.) He seeks compensatory and punitive damages. (Compl.¶ 36.)

## II. STANDARD OF REVIEW

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As noted earlier, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. *Shear v. National Rifle*

5. It is true that the Court of Appeals has suggested that Defendants may have absolute immunity. *See Zandford v. National Ass'n of Sec. Dealers, Inc.*, 80 F.3d 559, 1996 WL 135716 (D.C.Cir. 1996) (unpublished disposition). However, since the opinion was unpublished, it may not be relied

*Ass'n of Am.*, 606 F.2d 1251, 1253 (D.C.Cir. 1979).

## III. ANALYSIS

Given the absence of any citeable controlling authority from this Circuit, the Court will assume, arguendo, Defendants have not established immunity and will decide the merits of the case.[5]

### A. Abuse of Process Claim

■ The parties do not dispute that the substantive law of the District of Columbia governs Zandford's common law tort claim. *See Ideal Elec. Sec. Co., v. International Fidelity Ins. Co.*, 129 F.3d 143, 148 (D.C.Cir. 1997); *Rafferty v. NYNEX Corp.*, 60 F.3d 844, 850 (D.C.Cir.1995); *Williams v. Williams, Jr.*, 390 A.2d 4, 5 (D.C.1978).

Zandford argues that in causing his indictment and prosecution, Defendants have abused process in violation of the common law. (Compl.¶ 9.) Defendants respond, however, that Zandford has substantively pled the tort of "malicious prosecution" while erroneously labeling it "abuse of process". (Defs.' Mot. to Dismiss at 15.)

■ The torts of abuse of process and malicious prosecution are similar in that each involves improper use of the courts and the judicial process. They differ, however, in one important respect:

> The significant distinction between these two causes of action is the point at which malice becomes involved in the prior proceeding; if a defendant maliciously causes process to issue without probable cause, the plaintiff will have a claim sounding in malicious prosecution, but if a defendant causes process to issue, even where there is probable cause, and later misuses that process, the plaintiff will have a claim sounding in abuse of process.

1 Am.Jur.2d *Abuse of Process* § 3, at 412 (1994).

on as controlling authority. D.C. Local Rule 11(c). In addition, that opinion simply remanded the case to Judge Richey "for reconsideration of whether, and to what extent, the alleged misconduct of appellees may not be shielded by absolute immunity." *Id.* at *2.

■ A plaintiff thus states a claim for malicious prosecution when "the alleged tort is based upon a lack of sound foundation for the instigation of the ... action." *Bown v. Hamilton*, 601 A.2d 1074, 1079 n. 14. (D.C. 1992).

It is well-established that a plaintiff's characterization of his claim is not necessarily controlling. *Morfessis v. Baum*, 281 F.2d 938, 940 (D.C.Cir.1960); *Saunders v. Nemati*, 580 A.2d 660, 661 (D.C.1990). The Court must thus examine the elements of Zandford's cause of action to determine whether he alleges the tort of malicious prosecution or abuse of process. *Saunders*, 580 A.2d at 661.

■ Zandford's Complaint alleges that "there was no cause for investigation [or] indictment". (Compl. ¶ 18; *see also* ¶¶ 23, 30.) Since he has alleged that the Defendants lacked a "sound foundation for the instigation [rather than the prosecution] of the ... action", Count I of Zandford's Complaint states a claim for malicious prosecution, rather than abuse of process, under District of Columbia law. *Bown*, 601 A.2d at 1079 n. 14.

■ In order to prevail on a malicious prosecution claim, a plaintiff "must plead and prove four things: (1) the underlying suit terminated in plaintiff's favor; (2) malice on the part of the defendant; (3) lack of a probable cause for the underlying suit; and (4) special injury occasioned by plaintiff as the result of the original action." *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C.1980).

Zandford was convicted on all counts by a jury in Baltimore, Maryland in July 1995, and his conviction was affirmed by the Fourth Circuit Court of Appeals. *See Zandford*, 110 F.3d at 62, 1997 WL 153822. Since the underlying suit was not terminated in Zandford's favor, and there was no lack of probable cause for its instigation, he cannot sustain a claim for malicious prosecution. Therefore, Claim I must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

■ Even if Zandford's Complaint is construed as abuse of process, he would have to "allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge." *Morowitz*, 423 A.2d at 198 (citing *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C.1959)). "The mere issuance of the process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action lies in the improper use after issuance." *Hall*, 147 A.2d at 868.

Zandford only alleges that Defendants abused process after the indictment by informing this Court of Zandford's indictment and conviction in an attempt to have Civil Action No. 94-180(GK) dismissed. (Compl.¶¶ 25, 27.) The Court finds that Defendants' action was perfectly proper, and was not an abuse of process or "perversion of the judicial process".

### B. RICO Claim

■ Zandford alleges that by engaging in an eight-year period of racketeering activity against him, Defendants have violated RICO §§ 1964(c), 1962(d), and 1962(c). Section 1962(c) states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).[6]

The Defendants do not dispute that the NASD is an enterprise that affects interstate commerce. Nor do they dispute that the Defendants are employed or associated with the NASD. The Defendants do rigorously deny that they were engaged in a pattern of racketeering activity. (Defs.' Mot. to Dismiss at 22.)

A "pattern of racketeering activity" requires commission of at least two predicate acts of "racketeering activity". 18 U.S.C. §§ 1961(1), (5); *see also Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.*, 941

---

6. *Section 1964(c) provides a civil remedy for violations of RICO §§ 1962(c) and 1962(d). Section 1962(d) makes it unlawful to conspire to violate § 1962(c).*

F.2d 1220, 1224 (D.C.Cir.1991). "Racketeering activity" is defined by RICO § 1961 to include, *inter alia,* violations of federal mail and wire fraud statutes. 18 U.S.C. § 1961.

Although Zandford alleges that the Defendants have committed many wrongful acts, only two of these (Defendants' alleged violations of the federal mail fraud statute and federal wire fraud statute) are listed in § 1961 and are therefore governed by RICO. "Only the types of conduct listed in § 1961(1) are proper RICO predicates." *Committee to Defend the U.S. Const. v. Moon,* 776 F.Supp. 568, 572 n. 4 (D.D.C.1991).

Zandford alleges that from 1987 to 1995, the Defendants violated federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, as part of their racketeering activity against him.[7] (Compl.¶¶ 11, 41.) Defendants respond that Zandford's Complaint fails to plead mail or wire fraud with the level of specificity required by Fed.R.Civ.P. 9(b) and thus his RICO claim must be dismissed. (Defs.' Mot. to Dismiss at 23.)

Fed.R.Civ.P. 9(b) states that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake . . . shall be stated with particularity." Fed.R.Civ.P. 9(b). This Circuit requires a plaintiff to plead the " 'time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud.'" *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1278 (D.C.Cir.1994) (quoting *United States v. Cannon,* 642 F.2d 1373, 1385 (D.C.Cir.1981) (citation omitted), *cert denied,* 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982)); *see also Firestone v. Firestone,* 76 F.3d 1205, 1211 (D.C.Cir.1996).

Zandford's Complaint states that "the defendants violated federal mail and wire fraud statutes, 18 U.S.C. 1341, and 18 U.S.C. 1343, respectively. The defendants' use of the U.S. mail, and interstate wires, was a necessary and foreseeable part of their racketeering activity against Zandford." (Compl. ¶ 11; *see also* Compl. ¶ 41.)

These allegations obviously fail to plead the time, place or circumstances that constitute the alleged fraud, and therefore fail to meet the standard of particularity required by Fed.R.Civ.P. 9(b) and this Circuit. Since these allegations form the basis of Zandford's RICO claim, that claim must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

■ In Plaintiff's Opposition to the Motion to Dismiss, he attempts to comply with Fed. R.Civ.P. 9(b) by including dates, places, and circumstances surrounding several alleged acts of wire and mail fraud. (Pl.'s Opp'n. at 14–17.) Recognizing his failure to include these allegations in the Complaint, Zandford states that he "must be given leave to amend and cure any deficiencies in his Complaint." (Pl.'s Opp'n. at 5.)

Fed.R.Civ.P. 15 states that once a responsive pleading has been served, a party may amend his pleading by leave of the court or with the consent of the adverse party. Leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). A District Court should grant leave to amend "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Atchinson v. District of Columbia,* 73 F.3d 418, 425 (D.C.Cir.1996).

The Court concludes that there are reasons why justice does not require that Zandford be granted leave to amend his Complaint. First, allowing Zandford to amend would result in undue prejudice to the Defendants. *See Foman,* 371 U.S. at 182, 83 S.Ct. 227; *Atchinson,* 73 F.3d at 425. Zandford never filed a formal motion to amend his Complaint, and therefore Defendants have not even had the opportunity to respond to his demand.

Second, granting Zandford leave to amend would result in undue delay. *See Foman,*

---

7. Section 1341 makes it unlawful to send via the Postal Service anything intended to further a scheme to defraud. Section 1343 similarly makes it unlawful to transmit by means of wire, radio, or television communication, in interstate or foreign commerce, anything intended to further a scheme to defraud.

371 U.S. at 182, 83 S.Ct. 227; *Atchinson,* 73 F.3d at 425. Zandford filed his Complaint on August 24, 1995. Almost two years later, on July 25, 1997, he filed Plaintiff's Opposition containing one sentence regarding his right to amend. (Pl.'s Opp'n. at 5.) Today, over three years after filing his Complaint, Zandford has yet to file a formal motion or ask the Court for leave to amend. In considering the potential prejudice to the Defendants, this Court again notes that this is Zandford's third suit against the NASD, the first having been filed in 1993. In the interest of resolving this litigation, the Court exercises its discretion to deny Zandford's request to amend. *See Doe v. McMillan,* 566 F.2d 713, 720 (D.C.Cir.1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 59 (1978).

■ Third, granting leave to amend would be futile. *See Foman,* 371 U.S. at 182, 83 S.Ct. 227; *Atchinson,* 73 F.3d at 425. Even if this Court accepted the facts as stated by Plaintiff in his Opposition, Zandford still does not plead a claim upon which relief could be granted.

■ After alleging two predicate acts of racketeering, a plaintiff must then allege and demonstrate "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Continued criminal activity can refer "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. 2893.

■ Zandford does not allege, nor can it be inferred, that the Defendants' conduct poses a future threat of repetition. Zandford is no longer employed in the securities industry. His conviction and current prison sentence make it highly unlikely, if not impossible, that he will be allowed to reenter that industry and thus be subject to NASD regulation. *See Pyramid Sec. Ltd. v. IB Resolution, Inc.,* 924 F.2d 1114, 1119 (D.C.Cir.1991) (plaintiff must allege "far more than a hypo-

thetical possibility of further predicate acts"), *cert. denied,* 502 U.S. 822, 112 S.Ct. 85, 116 L.Ed.2d 57 (1991).

■ Therefore, Zandford must show that the Defendants engaged in a closed period of repeated criminal conduct. *Northwestern Bell,* 492 U.S. at 241, 109 S.Ct. 2893. Courts consider many factors in determining whether a pattern of criminal activity constitutes a "closed period of repeated conduct." These factors include: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n.,* 48 F.3d 1260, 1265 (D.C.Cir.1995) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1411–13 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991)); *Perkins v. Nash,* 697 F.Supp. 527, 531 (D.D.C.1988) (citing *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986)).

In this case, Zandford, in Plaintiff's Opposition, claims fourteen predicate acts of racketeering over an eight-year period. (Pl.'s Opp'n. at 17.) In reality, Zandford has sufficiently pled only six predicate acts over a period of less than two years. Although Zandford alleges Defendants' racketeering activity began in 1987 and continued through 1995, the alleged activity took place in two distinct phases. The first phase began on August 8, 1987 when the NASD mailed its initial complaint to Zandford. (Pl.'s Opp'n. at 15.) This phase ended in April 1989 when the DBCC used the U.S. mails to impose sanctions. (Pl.'s Opp'n. at 16.) Zandford has sufficiently pled six predicate acts of racketeering activity during this time period.[8] (Pl.'s Opp'n. at 14–16.)

The second phase is alleged to have begun with the NASD's new investigation of Zandford in 1991 and continued through his 1995 conviction. As to this period, Zandford has not pled, with the required specificity, any predicate acts of racketeering activity. (Pl.'s Opp'n. at 17.) Zandford claims that "begin-

---

8. Zandford also alleges seven acts in violation of 18 U.S.C. § 1505 but violations of § 1505 are not predicate acts of racketeering activity as defined by RICO. *See* 18 U.S.C. § 1961(1).

ning in 1991 and going through 1995, the RICO defendants used interstate wires to contact parties in Virginia ... Pennsylvania ... and Maryland .... Furthermore, documents and information were exchanged via U.S. mails." (Pl.'s Opp'n. at 17.) These allegations again fail to plead the time, place or circumstances that constitute the alleged fraud. Thus, the Court concludes that if allowed to amend his Complaint, Zandford would sufficiently plead only six predicate acts of racketeering activity in a period of less than two years.

These six predicate acts were in furtherance of one scheme, use of the regulatory and disciplinary authority of the NASD to cause harm to his business and reputation. (Compl.¶ 39.) The Court will assume, given Plaintiff's conviction, that he has suffered related injuries (the destruction of his business, employability, and reputation) and he is the only victim.

In *Edmondson,* the plaintiffs, a real estate developer and its broker, alleged fifteen predicate acts over a three year period. These acts were in furtherance of one scheme, a scheme to prevent the sale of an apartment building. The scheme caused one injury, the loss of the sale, that was suffered by three victims. The court stated that "in some cases ... some factors will weigh so strongly in one direction as to be dispositive". 48 F.3d at 1265. The court determined that "the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiffs to state a RICO claim". *Id.*

Zandford's allegations, in this case, are weaker than those pled by plaintiffs in *Edmondson* and thus do not constitute a RICO claim. Zandford alleges six predicate acts over a period of less than two years, whereas plaintiffs in *Edmondson* alleged thirteen predicate acts over three years. Zandford alleges a single scheme with one victim, whereas plaintiffs in *Edmondson* alleged a single scheme with three victims. Amendment of Zandford's claim would thus be futile as the facts stated by Plaintiff in his Opposition, still do not plead a RICO claim upon which relief can be granted

Count II of Zandford's Complaint will thus be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss [# 25] is **granted.** An Order will issue with this opinion.